UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID WASHINGTON,

       Plaintiff,

v.                                                    Case No. 1:07-cv-126
                                                  Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

       Plaintiff was born on October 7, 1964 and has variously stated that he graduated from high school and earned a GED (AR 94, 198, 586-87).[1] He alleges a disability onset date of June 27, 2003 (AR 94). Plaintiff had previous employment as a security guard, janitor, medical billing trainee, temporary worker and printing press worker (AR 222). Plaintiff identified his disabling conditions as disc protrusion C5-C6, compression on the C6 nerve root, degenerative disease T12-L1, tear of the annulus, headaches, and continuous pain in the neck, back and arm (AR 192). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on May 9, 2006 (AR 15-45). This

---

[1] Citations to the administrative record will be referenced as (AR "page #").

decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases.  *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265,

1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). *See Brooks v. Sullivan*, No. 90-5947, 1991 WL 158744 at *2 (6th Cir. Aug. 14,1991) ("[t]o establish medical eligibility for SSI, plaintiff must show either that he was disabled when he applied for benefits . . . or that he became disabled prior to the Secretary's issuing of the final decision on this claim . . . 20 C.F.R. §§ 416.335, 416.330").

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (AR 18). Second, the ALJ found that he suffered from severe impairments of degenerative disc disease and spondylosis of the lumbar spine; degenerative disc disease of the cervical spine with a left sided disc protrusion at C5-C6; and, resulting headache, sleep apnea and mood disorder with depression and anxiety (AR 18). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 38).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to lift and carry up to 20 pounds occasionally and 10 pounds frequently; requires a sit/stand option; unable to climb ladders, ropes, or scaffolds; unable to climb stairs; unable to balance, stoop, kneel, crouch, or crawl more than occasionally; unable to maintain attention and concentration required to perform detailed or complex tasks; and must avoid dusts, fumes, gases, and other pulmonary irritants.

(AR 38). The ALJ found that plaintiff could not perform his past relevant work (AR 43).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform a range of light work (AR 44). Specifically, the ALJ found that plaintiff could perform the following light work in the regional economy (Michigan): machine tender (8,800 jobs); counter clerk (8,200 jobs); and light assembly (14,200 jobs) (AR 44). In addition, plaintiff could perform a range of sedentary work in the regional economy, including: ticket sales (4,800 jobs); bench assembler (4,900 jobs); sorter (5,000 jobs); and security monitor (3,700 jobs) (AR 44). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 45).

### III. ANALYSIS

Plaintiff has raised three issues on appeal.

    **A.    The ALJ committed reversible error by not properly considering the opinions of plaintiff's treating physicians.**

Plaintiff contends that the ALJ improperly rejected the opinions expressed by four physicians: Farook J. Kidwai, M.D. (neurological surgeon); Babar Sanaullah, M.D.; Joseph VandenBosch, M.D.; and, Gary Bailey, D.O.

    **1.    Treating Physicians**

A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and

5

documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. The ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

  **a.** **Dr. Kidwai**

On August 6, 2004, Dr. Kidwai described plaintiff's condition and limitations as follows:

> For the management of his occipital neuralgia, I would recommend occipital blocks followed by, if needed, occipital cryoneurolysis as well as cervical peridural injections in the hope of achieving a longer lasting headache control. He can also try to immobilize his neck in a soft cervical collar. The collar he has is twice the size of his neck. I did tailor it to his size and advised him to keep the collar on for few days to see if that offers any relief, especially at night. He should avoid all activities that aggravate his symptoms. In particular, he should avoid repetitive bending and twisting of his neck. He should refrain from prolonged flexed posture of his cervical spine. If sitting at a computer or television, the monitor should be at his eye level. He should also not lift more than 30 pounds at a time.

(AR 478). In January 2005, Dr. Kidwai repeated these restrictions, stating that plaintiff should "refrain from prolonged flexed posture of his cervical spine. If sitting at a computer or television,

the terminal should be at eye level. He should also not lift more than 30 pounds at a time" (AR 475).

In September 2005, Dr. Kidwai revised these restrictions as follows:

> He should avoid repetitive bending and twisting of his neck and low back. He should refrain from prolonged flexed posture of his cervical spine. If sitting at a computer or television, the monitor should be at his eye level. He should refrain from prolonged sitting, standing, walking, or driving for more than one hour at a time. After each such period of activity, he should either change his pace or, better yet, take a few minutes' break. He should also not lift more than 25 pounds at a time.

(AR 471).

In his decision, the ALJ summarized the doctor's restrictions as follows:

> Dr. Kidwai has said on two occasions that the claimant has functional limitations and should avoid all activities that aggravate his symptoms. Specifically, he said that the claimant should avoid repetitive bending and twisting of the neck and refrain from prolonged flexed posture of the cervical spine. If sitting at a computer of television, the monitor should be at eye level and the claimant should avoid lifting more than 30 pounds.

(AR 40).

The ALJ stated that Dr. Kidwai's opinions are "clearly his own opinions and are consistent with the evidence as a whole," and gave these opinions controlling weight (AR 40).[2] However, the ALJ's RFC determination did not include any of Dr. Kidwai's restrictions as set forth in September 2005. The ALJ's decision is internally inconsistent, because it assigns controlling weight to Dr. Kidwai's limitations, but does not adopt those limitations in the RFC determination. The ALJ's decision is not supported by substantial evidence. Accordingly the decision should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). *See Rodriguez v.*

---

[2] In adopting the restrictions, the ALJ stated that Dr. Kidwai gave these restrictions twice, citing Exhibit 16F, pp. 5-6 and 34-44 (AR 40). The citation to pages 34-44 is incorrect; Exhibit 16F contains only 12 pages (AR 471-82).

*Commissioner of Social Security*, 231 Fed.Appx. 103, 106 (3rd Cir. 2007); *Vuxta v. Commissioner of Social Security*, 194 Fed.Appx. 874, 878 (11th Cir. 2006); *Bagwell v. Barnhart*, 338 F.Supp.2d 723, 735 (S.D.Tex. 2004) (court could "scarcely perform its assigned review function" when the ALJ failed to reconcile inconsistencies in her RFC finding).

### b.     Dr. Sanaullah

In May 2003, plaintiff's primary physician, Dr. Sanaullah, determined that plaintiff should avoid lifting, bending or standing for prolonged periods (AR 437). In September 2004, Dr. Sanaullah found that plaintiff had nearly identical restrictions as those found by Dr. Kidwai in August 2004 with the addition of "no standing for more than one hour" (AR 40, 429). In December 2004, Dr. Sanaullah prepared a "medical needs" form for the Michigan FIA stating that plaintiff can work with limited walking, standing and lifting (AR 40, 341). On July 19, 2005, Dr. Sanaullah stated in a "sworn statement" that plaintiff was "unemployable" for full-time work (i.e., 40 hours per week, eight hours per day); that he would have problems with punctuality due to symptoms approximately four days per week; and, that he would "require frequent breaks, possible one per hour and would require a constant sit-stand option for employability" (AR 400-01).

The ALJ did not give significant weight to Dr. Sanaullah's restrictions after concluding that "it is clear that the opinions are not the actual medical opinions of Dr. Sanaullah," because he adopted the restrictions as determined by Dr. Kidwai (AR 40). In addition, the ALJ noted that Dr. Sanaullah's "sworn statement" resulted from leading questions provided by plaintiff's attorney, and "are identical" to the statements provided by Dr. Bailey and Dr. VandenBosch (AR 40, 496-503, 508-09). The ALJ also questions Medical Examination Report that was prepared "by

8

an unverified person, thought to be Dr. Sanaullah" on December 16, 2004 (AR 40, 331-32).[3] The ALJ goes on to state that "[i]f this report is that of Dr. Sanaullah, it was formulated on the basis of the claimant's subjective complaints, as it was already noted by Ms. Rottman [i.e., Amy Rottman from the doctor's office] that Dr. Sanaullah was unable to provide these answers based upon the medical evidence" (AR 40).

After reviewing the record, the court agrees with plaintiff that the ALJ failed to properly evaluate Dr. Sanaullah's opinions. It is not surprising that Dr. Sanaullah would adopt restrictions similar to those found by Dr. Kidwai, the treating neurologist, if in fact they were applicable. In finding that Dr. Sanaullah's September 2004 restrictions were "almost word for word" as those listed by Dr. Kidwai in August 2004, the ALJ omitted to mention that Dr. Sanaullah included the handwritten and initialed additional restriction of "no standing for more than one hour" (AR 40, 429). The "sworn statements" signed by Drs. Sanaullah and VandenBosch, though similar, are not identical (AR 400-01, 508-09). Similarly, Dr. Bailey's testimony and conclusions are not identical to Dr. Sanaullah's written statement (AR 400-01, 496-507). Finally, the ALJ's conclusion that the December 16, 2004 Medical Examination Report was based upon plaintiff's subjective complaints is unwarranted. On November 15, 2004, plaintiff asked the doctor to fill out forms for the FIA (AR 423). Plaintiff was advised that the doctor "would not know the answers" to some of the questions "off hand," and that the office staff "will speak to [Dr.] Sanaullah about an appointment" (AR 423). Dr. Sanaullah examined plaintiff on December 16, 2004, i.e., the date of the Medical Examination Report (AR 422).

---

[3] The signature on the report is illegible.

As a treating physician, Dr. Sanaullah's opinions should be "accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d at 287; 20 C.F.R. § 404.1526. The fact that Dr. Sanaullah agreed with the limitations expressed by a treating specialist does not mean that he failed to reach his own conclusions. On the contrary, it would suggest that the doctor's shared the same opinion. Under these circumstances, the ALJ has failed to provide good reasons for not crediting Dr. Sanaullah's opinion. *See Wilson*, 378 F.3d at 545. Accordingly, the ALJ should re-evaluate Dr. Sanaullah's opinions on remand.

### c. Dr. VandenBosch

Dr. VandenBosch, an anesthesiologist at Michigan Pain Consultants, PC, treated plaintiff from December 2004 through August 2005 (AR 512-18). Plaintiff reported to Dr. VandenBosch that while he had a constant aching pain in his back, his chief complaint involved neck and headache pain (AR 517). The doctor developed a treatment plan for this complaint, which involved a series of three cervical epidural injections (AR 512-18). In December 2005, Dr. VandenBosch signed a "sworn statement" which provided in pertinent part: that he is plaintiff's attending physician; that plaintiff's severe pain results in "no significant residual functional capacity for any full-time work activity involving lifting, carrying, pushing, or pulling;" that due to his "physical and emotional problems," plaintiff "would likely miss" more than three days of work per month and be tardy more than three days per month; that plaintiff is not capable of working a 4-hour week; and, that plaintiff "would require frequent breaks from work, such as one per hour, for approximately ten minutes and would require a constant sit-stand option for employability" (AR 508-09).

The ALJ gave Dr. VandenBosch's RFC opinions little weight because the doctor's treatment was limited to plaintiff's cervical spine impairment; he did not treat plaintiff for a lumbar impairment; the treatment records do not reference plaintiff's depression; the treatment records do not include restrictions as identified in the doctor's sworn statement; and his opinions were not consistent with the record as a whole (AR 41). The record reflects that Dr. VandenBosch's treatment was limited to treating plaintiff's headaches and neck pain. The ALJ has given good reasons for rejecting the sweeping limitations as set forth in Dr. VandenBosch's sworn statement as unsupported by sufficient clinical findings by the doctor. Accordingly, the ALJ properly rejected the limitations as set forth in the doctor's sworn statement.

### 2.     **Examining physician (Dr. Bailey)**

Dr. Bailey gave a sworn statement on December 6, 2005 (AR 496-503). The doctor testified that he had an opportunity to review plaintiff's medial records, including a "number of MRI studies," and examined plaintiff on December 5, 2006 (AR 498). It was his understanding that plaintiff was diagnosed with protruding or herniated discs at L4-L5-S1, abnormalities at C5-C6, and C-6 nerve root compression (AR 498). The doctor stated that he observed reflex changes primarily in the lower extremities, "decreased sensation in the nerves that are innervated by the areas where these discs are affected," muscle weakness, and limited range of motion in the "cervical innervated areas as well as the lower extremities" (AR 499). The doctor agreed with Dr. Sanaullah's limtiations that plaintiff "should avoid all activities that aggravate symptoms, and that he would not be capable of working a full-time eight-hour-per-day-40-hour-per-week-job" (AR 501). Dr. Bailey also agreed that it would be "reasonable" for plaintiff to have frequent breaks during work "such as one per hour

as much as ten minutes at a time" (AR 501). The doctor also noted that plaintiff had problems with concentration, showing "a little confusion at times during the history" (AR 503).

The ALJ has the discretion to weigh the medical evidence and to resolve conflicts in that evidence. *See Bradley v. Secretary of Housing and Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988); *King v. Heckler*, 742 F.2d 968, 74 (6th Cir. 1984). The regulations provide that the agency "will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d). The record reflects that Dr. Bailey examined plaintiff only once. Plaintiff admits that he was a consulting, rather than a treating physician. Plaintiff's Brief at 17. Unlike a treating physician, there is no requirement that the ALJ give good reasons for rejecting an examining physician's opinions. *See Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 507 (6th Cir. 2006) (the regulation requiring that the Commissioner "give good reasons" for the weight given to a treating source's opinion, 20 C.F.R. § 404.1527(d)(2), does not apply to an examining physician).

Here, the ALJ gave "very little" weight to the opinions expressed by Dr. Bailey's opinions (AR 41-42). The ALJ observed: that the doctor did not identify the records he reviewed; that the doctor did not specify any details of his December 5, 2005 examination; provided no medical records identifying the signs, symptoms or other items associated with the examination; and, expressed his opinion by answering leading questions couched in qualifying terms such as "it is my understanding" (AR 41). Based on this record, the ALJ could properly give little weight to Dr. Bailey's opinions, because it lacked relevant supporting evidence. *See* 20 C.F.R. § 404.1527(d)(3) ("[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion").

### B. The ALJ did not have substantial evidence to support his finding that plaintiff could have performed sedentary work.

Next, plaintiff apparently disputes the ALJ's determination that he could perform other work in the national economy. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

The statement of error is confusing, because the ALJ found that plaintiff could perform light work in addition to sedentary work. Plaintiff presents little argument on this issue and cites an unrelated page in the administrative record (AR 433) to support his contention. Plaintiff's Brief at 18. It appears that plaintiff may have been referring to the VE's testimony that he could not perform any work if he suffered from certain limitations in addition to those as set forth in the ALJ's RFC determination (e.g., missing three work days a month and "no capacity for full-time work involving carrying, pushing, or pulling") (AR 646).

As previously discussed, the ALJ should re-evaluate the limitations expressed by Drs. Kidwai and Sanaullah. The vocational evidence cannot be addressed until the ALJ performs this re-evaluation, and either re-affirms or revises his RFC determination. If the ALJ revises his RFC

determination, then it will be necessary to obtain additional vocational evidence based upon that revised determination. Accordingly, this matter should be addressed on remand.

### C.     The ALJ did not fulfill his duty to provide plaintiff with a fair hearing.

Finally, plaintiff contends that "the ALJ clearly exhibited personal bias against Plaintiff and/or his attorney." Plaintiff's Brief at 18.[4] Hearing officers are presumed to be unbiased. *Schweiker v. McClure*, 456 U.S. 188, 195 (1981). A party can rebut this presumption by a showing of conflict of interest or other specific reason for disqualification, but the burden of establishing a disqualifying interest is upon the person making the contention. *Id. See Davis v. Chater*, No. 95-2235, 1996 WL 732298 at * 4 (6th Cir. Dec. 19, 1996); *NLRB v. Ohio New & Rebuilt Parts, Inc.*, 760 F.2d 1443, 1451 (6th Cir. 1985). "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555 (1994). However, such statements will support a bias challenge "if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.*

First, plaintiff contends that the ALJ was biased because he accused plaintiff's counsel of having a conflict of interest (AR 555-65). Plaintiff's Brief at 14-15. This claim arises from counsel's submission of an affidavit from Attorney Stephen De Haan, in which the affiant explains plaintiff's earnings; summarizes his medical conditions; comments on medical treatment (e.g., that plaintiff's health plan will not authorize inpatient surgery); and determines that plaintiff "was not able to be gainfully employed on an ongoing basis in a competitive work environment of

---

[4] The court notes that the alleged bias involved plaintiff's previous counsel, not his present attorney, Mr. James Rinck.

14

40 hours per week, 8 hours per day" (AR 31, 293-96). The ALJ sought an explanation from plaintiff's counsel regarding the weight to assign such an affidavit (AR 555-65). In addition, the ALJ was concerned about a potential conflict of interest, since plaintiff's counsel and Mr. De Haan apparently practiced together as "Jensen & De Haan, P.C. Attorneys at Law" (AR 309, 555-65). Plaintiff's counsel denied that there was a conflict and represented that Mr. De Haan was not his law partner but that they "shared expenses" (AR 43, 560). However, plaintiff's counsel was not particularly forthcoming with details, suggesting that he brief the issue or that the ALJ give the document no weight (AR 560-65). Later, plaintiff's counsel submitted a letter from Mr. De Haan to support its inclusion in the record (AR 43, 309-11).

In his decision, the ALJ found that Mr. De Haan clearly had a financial conflict of interest in this matter (43). The ALJ noted that plaintiff's counsel's representations were not reconcilable with the fact that Jensen & De Haan is a domestic professional services corporation, with annual reports signed by Mr. DeHaan as the vice president (AR 43). The ALJ found that Mr. De Haan lacked credentials to offer these opinions and assigned the affidavit no weight (AR 43). The ALJ stated that he "will not enter into a discussion in this document with respect to the propriety of offering testimony of an attorney associated with the same law firm as the claimant's attorney" (AR 43). In addition, the ALJ pointed out that Mr. De Haan's affidavit contained a "misrepresentation of a fact material to this case," stating that plaintiff lost his job at God's Kitchen due to a physical inability to perform his tasks (AR 43). Specifically, Mr. De Haan stated in his affidavit that "[m]y investigation determined that [plaintiff] lost his job at God's Kitchen because of a physical inability to perform the tasks on a continuing and sustained basis" (AR 295). On the

contrary, plaintiff's testimony indicates that he resigned from the job because he did not think he was treated fairly regarding a disciplinary matter (AR 43, 566-72).

Second, the ALJ asked counsel why certain records submitted by plaintiff "were not present" (AR 579-80). Plaintiff's Brief at 15. In this instance, the ALJ asked plaintiff's counsel why he failed to provide medical records with the sworn statement of Dr. Bailey as required by the agency rules (AR 579-80). Plaintiff's counsel admitted that this was an oversight on his part (AR 580). The ALJ further advised plaintiff's counsel that this was not an adversary proceeding, and that it would be critical to include the records of an examining physician (AR 581).

Third, plaintiff contends that ALJ was biased because he chose to question plaintiff about why plaintiff did not complain about alleged medication side effects to his doctors (AR 590-92). *See* Plaintiff's Brief at 15. This contention is without merit. Plaintiff raised a claim that some medication made him drowsy. The ALJ was certainly within his bounds to ask plaintiff to explain the facts surrounding these alleged disabling side effects.

The ALJ's actions, viewed individually and collectively, indicate that the ALJ had some level of frustration in dealing with plaintiff and his counsel. However, the record does not reveal such a high degree of antagonism "as to make fair judgment impossible." *Liteky*, 510 U.S. at 555. First, it appears to the court that the ALJ's questioning of plaintiff's counsel regarding Mr. De Haan's affidavit was an attempt to determine the reasons for including the affidavit in the record, to understand the relationship between the two attorneys and to determine the amount of weight that should be given to this affidavit. The ALJ's written decision explained his reasons for assigning no weight to the affidavit. Second, the ALJ's questions to counsel regarding the absence of Dr. Bailey's medical records appeared to seek clarification as to why counsel failed to provide those

records. Third, the ALJ's questions to plaintiff regarding the medication side effects appeared to be routine fact finding.  Accordingly, the court finds no bias in this case.

**IV.     Recommendation**

I   respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should (1) re-evaluate the medical opinions expressed by Drs. Kidwai and Sanaullah, and,  (2) re-evaluate the vocational evidence with respect to plaintiff's ability to perform other work that exists in the national economy.


Dated:  January 17, 2008                         /s/ Hugh W. Brenneman, Jr.
                                                 HUGH W. BRENNEMAN, JR.
                                                 United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).